FILED

'12 APR -9 PM 2:20

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANCHO MOUNTAIN PROPERTIES, INC.,<br><br>                                   Plaintiff,<br><br>vs.<br><br><br>RAY GRAY and LINDA GRAY,<br><br>                                   Defendants. | CASE NO. 11-CV-00358 BEN (BLM)<br><br>**ORDER:**<br><br>**(1)  GRANTING MOTION FOR SUMMARY JUDGMENT AGAINST RAY GRAY**<br><br>**(2) DENYING AS MOOT MOTION TO STRIKE PLAINTIFF'S SUPPLEMENTAL DECLARATION AND FILINGS**<br><br>[Docket Nos. 23, 42] |

Presently before the Court are Plaintiff's Motion for Summary Judgment Against Ray Gray (Docket No. 23) and Defendant Ray Gray's Motion to Strike Plaintiff's Supplemental Declaration and Filings Offered with Plaintiff's Reply (Docket No. 42). For the reasons stated below, the Motion for Summary Judgment is **GRANTED** and the Motion to Strike is **DENIED AS MOOT**.

## BACKGROUND

This action arises from a guaranty executed by Defendants Ray Gray and Linda Gray (husband and wife) to secure the purchase of real property located in Paciences, California, by Pfau, Pfau & Pfau, LLC ("Pfau"). On August 28, 2006, Pfau entered into a Loan Agreement with CMR Mortgage Fund II, LLC ("CMR II") for the purpose of acquiring land and developing residential lots. The loan was secured by liens on real properties located in San Diego, Fresno, and San Benito Counties. Contemporaneously with the Loan Agreement, Pfau executed a Promissory Note, in the principal

1    amount of $19,500,000, payable to CMR II.  CMR II loaned $19,500,000 in principal to Pfau.

2    Defendants made, executed, and delivered a General Guaranty and Indemnity Agreement ("Guaranty")

3    pursuant to which Defendants guaranteed "the punctual payment when due, whether at stated maturity,

4    by acceleration or otherwise, of all of [Pfau's] indebtedness, obligations and liabilities to the Lender."

5    (Cheek Decl., Exh. C [Guaranty], at 2.)

6         Pfau's and Defendants' obligations under the loan and related Guaranty were assigned by CMR

7    II to ING USA Annuity and Life Insurance Company ("ING USA"), which assigned the obligations

8    to Lion II Customs Investments, LLC ("Lion II"), which then assigned the obligations to Plaintiff.

9    Starting on July 1, 2008, Pfau failed to make timely interest payments.  CMR II paid Pfau's monthly

10   payments through January 2009, but failed to make payments after that time.  In addition, Pfau filed

11   for relief under Chapter 11 in the United States Bankruptcy Court, Southern District of California, on

12   December 16, 2008.  Pfau's failure to timely make its scheduled interest payments as well as its filing

13   for relief under Chapter 11 constituted a default on the loan documents.

14        For the past three years, Ray Gray has engaged in litigation against Plaintiff, contesting the

15   foreclosure of the properties that served as security for the loan.  For instance, on September 24, 2010,

16   after Ray Gray had been removed as Pfau's manager, he filed an Emergency Ex Parte Application for

17   Temporary Restraining Order ("TRO") on behalf of Pfau in the bankruptcy action, in which Pfau

18   sought to enjoin Plaintiff from foreclosing on the properties.  Such an ex parte application for TRO

19   violated the bankruptcy court's Relief Stay Order, and was denied.  (Pl. RJN, Exhs. F, G.)[1]  Ray Gray

20   then obtained ex parte TRO's in the San Diego County and San Benito County Superior Courts,

21   shortly before foreclosure on the properties, without informing the state courts that the bankruptcy

22   court previously denied his application for TRO.  The TRO's granted by the state courts were later

23   dissolved.  (Id., Exh. H.)  Finally, Ray Gray filed an action against Plaintiff in the Northern District

24

25        [1]Plaintiff requests that the Court take judicial notice of four court documents filed in In re
     Pfau, Pfau & Pfau, LLC, Case No. 08-12840-PB11 (Bankr. S.D. Cal.): (1) the Order on Stipulation
26   Granting Relief from Stay, entered on October 22, 2009; (2) Order Denying Ex Parte Request for
     TRO, entered on September 27, 2010; (3) Order on Motion to Dissolve, entered on December 22,
27   2010; and (4) Reporter's Transcript of Proceedings dated April 11, 2011.  (Docket No. 23-4.)  The
     Court **GRANTS** these requests for judicial notice.  See Headwaters Inc. v. U.S. Forest Serv., 399
28   F.3d 1047, 1051 n.3 (9th Cir. 2005); Papai v. Harbor Tug & Barge Co., 67 F.3d 203, 207 n.5 (9th
     Cir. 1995).

1 │ of California on June 23, 2011, alleging wrongful foreclosure. (*See* Def. Mot. for Continuance, Relief

2 │ from Default, and Opportunity to File Response [Docket No. 33], at 4; Def. RJN, Exh. F.)

3 │       On February 18, 2011, Plaintiff initiated the present action to recover amounts due under the

4 │ Guaranty, as a result of Pfau's default. After foreclosing on certain secured property, Plaintiff claims

5 │ that a total of $10,622,705.64 is still due from Defendants.

6 │       Presently before the Court is Plaintiff's Motion for Summary Judgment against Ray Gray

7 │ (Docket No. 23) and Ray Gray's Motion to Strike Plaintiff's Supplemental Declaration and Filings

8 │ Offered with its Reply to Defendant's Summary Judgment Opposition (Docket No. 42). Although Ray

9 │ Gray did not timely file an opposition to the Motion for Summary Judgment, he filed a motion

10 │ requesting an opportunity to file an opposition, less than one court day before the hearing on the

11 │ Motion for Summary Judgment was originally scheduled to take place. (Docket No. 33.) The Court

12 │ granted him an extension of time to file an opposition to the Motion for Summary Judgment. (Docket

13 │ No. 37). The Court finds the Motions suitable for determination on the papers without oral argument,

14 │ pursuant to Civil Local Rule 7.1.d.1.

15 │ **DISCUSSION**

16 │ **I.    MOTION FOR SUMMARY JUDGMENT**

17 │       Summary judgment must be granted where the record shows "there is no genuine dispute as

18 │ to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a);

19 │ *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "persuade the

20 │ court that there is no genuine issue of material fact." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.,*

21 │ *Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

22 │       In California, a cause of action for breach of guaranty consists of the following elements: (1)

23 │ a contract; (2) plaintiff's performance or excuse for failure to perform; (3) defendant's breach; and (4)

24 │ damage to plaintiff resulting from the breach. *See Spinks v. Equity Residential Briarwood Apartments*,

25 │ 171 Cal. App. 4th 1004, 1031 (6th Dist. 2009). Here, Plaintiff has proven all four elements.

26 │       First, Ray Gray executed the contract, the Guaranty, in favor of Plaintiff, as an assignee of

27 │ CMR II. (Cheek Decl. ¶ 7, Exh. C.) Second, Plaintiff, as assignee, performed its duties under the Note

28 │ and Guaranty. The execution of the Guaranty was a condition precedent to CMR II advancing funds

1 | to Pfau. (*Id.*, Exh. C, at 41.) CMR II extended $19,500,000 in funds to Pfau after receiving the

2 | Guaranty. (*Id.* ¶ 10; Pl. RJN, Exh. F ¶ 13.)

3 |       Third, Ray Gray breached the contract. By entering the Guaranty, Ray Gray guaranteed the

4 | payment of all amounts owed by Pfau under the Note. (Cheek Decl., Exh. C, at 42.) Ray Gray's

5 | liability to pay Pfau's obligations accrued upon a default of the Note. (*Id.*, Exh. C, at 44.) An "Event

6 | of Default" includes the failure to pay "any installment of principal or interest payable pursuant to the

7 | Note on the date when due" or the filing of a "voluntary petition in bankruptcy." (*Id.*, Exh. A [Loan

8 | Agreement], at 22.) Therefore, events of default occurred when Pfau failed to make monthly payments

9 | and when Pfau filed for bankruptcy on December 16, 2008.

10 |       According to the Loan Agreement, Plaintiff is permitted to "[d]eclare the Note to be due and

11 | payable forthwith, without presentment, demand, protest or other notice of any kind, all of which are

12 | hereby expressly waived" upon default. (*Id.*, Exh. A, at 24.) Because no written notice of the Events

13 | of Default were required, all amounts owed by Pfau became immediately due and payable by Ray Gray

14 | as guarantor once an event of default under the Note occurred. (*Id.*, Exh. C, at 47.) Although Ray

15 | Gray's obligations were immediately due and payable, Ray Gray has not made a payment to Plaintiff.

16 | (*Id.* ¶¶ 15, 17.) This failure to pay Plaintiff the amounts owed by Pfau under the Note breaches Ray

17 | Gray's obligation under the Guaranty.

18 |       Fourth, Plaintiff has suffered damages as a result of Ray Gray's breach of the Guaranty.

19 | Plaintiff first seeks unpaid note payments, interest, and late fees. Under the Note, Pfau was obligated

20 | to make interest payments "in successive monthly installments commencing on October 1, 2006, and

21 | continuing on the first day of each and every calendar month thereafter up to and including September

22 | 1, 2009." (*Id.* ¶ 13 (internal quotation marks omitted).) The repayment of all remaining principal was

23 | to be made on September 1, 2009, and interest was set at 13.5% per annum. (*Id.*) If Pfau failed to

24 | timely make any payment, it agreed to pay a late charge of 10 cents for each dollar overdue. (*Id.* ¶ 14)

25 | Upon default under the Note, Pfau agreed to pay interest on the principal balance at the Default Rate

26 | of 18.5% per annum. (*Id.*) Neither Pfau, CMR II, nor Ray Gray has made any payments on the loan

27 | since January 2009. Accordingly, Ray Gray owes Plaintiff $19,500,000 in unpaid principal,

28 | $5,338,125 in accrued interest, $1,874,164.36 in default interest, and $153,562.50 in late fees, for a

1   total of $26,865,851.86. (*Id.* ¶ 19.)

2        In addition, Plaintiff seeks legal fees and costs, as well as foreclosure fees and costs, incurred

3   pursuant to the Note and Guaranty.  Pursuant to the Guaranty, Ray Gray is liable for all "[c]ourt costs,

4   attorneys' fees and expenses and other direct expenses of the Lender incurred in connection with a

5   default by Borrower in the payment or performance required under [the] Note [or] the Deed of Trust,"

6   as well as "[c]ourt costs, attorneys' fees and expenses and other direct expenses of the Lender incurred

7   in connection with a filing by or against Borrower of a petition in bankruptcy or the commencement

8   of a case or insolvency proceeding by or against Borrower under any provision or chapter of the

9   Federal Bankruptcy Code." (*Id.*, Exh. C, at 42.)  In connection with the foreclosure of the properties,

10   Plaintiff has incurred the following costs: $43,638 in foreclosure fees, $75,000 in publication fees,

11   $21,400 in phase I environmental report fees, and $39,062.80 in appraisal fees, for a total of

12   $179,100.80. (*Id.* ¶ 21.)  In addition, Plaintiff incurred a total of $457,752.98 in legal fees and costs

13   in an effort to collect the amount owed under the Note and Guaranty. (Pl. RJN, Exh. F ¶ 13; Rivas

14   Decl. ¶ 3.)

15        Plaintiff requests a total of $10,622,705.64.  This includes $26,865,851.86 in principal, interest

16   and late fees, $179,100.80 in foreclosure costs, and $457,752.98 in legal fees and costs, minus

17   $6,824,000 for a credit bid on the San Diego County Property and $10,056,000 for a credit bid on the

18   Fresno and San Benito Counties Property.

19        First, Ray Gray argues that the loan documents, including the Guaranty, are inadmissible

20   because the Cheek Declaration lacks personal knowledge (*i.e.*, is hearsay) and the loan documents have

21   not been authenticated.  The exhibits to the Cheek Declaration are operative documents, or "verbal

22   acts."  Operative documents include contracts, commercial paper, and negotiable instruments.  They

23   are not hearsay, and therefore need not fall under an exception to hearsay in order to be admitted into

24   evidence. *United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004); *see also Remington Invs., Inc.*

25   *v. Hamedani*, 55 Cal. App. 4th 1033, 1042 (2d Dist. 1997) ("The Promissory Note document itself is

26   not a business record as that term is used in the law of hearsay, but rather is an operative contractual

27   document admissible merely upon adequate evidence of authenticity.").

28        In addition, the loan documents are self-authenticating documents under Federal Rule of

1   Evidence 902(9) ("Commercial Paper and Related Documents").  Under Rule 902(9), extrinsic

2   evidence of authenticity does not need to be provided for "[c]ommercial paper, a signature on it, and

3   related documents, to the extent allowed by general commercial law."  Under California Commercial

4   Code Section 3308(a), "In an action with respect to an instrument, the authenticity of, and authority

5   to make, each signature on the instrument is admitted unless specifically denied in the pleadings."

6   Moreover, "the signature is presumed to be authentic and authorized unless the action is to enforce the

7   liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue

8   of validity of the signature."  CAL. COM. CODE § 3308(a).  Because the signer here is alive and

9   competent, the loan documents are self-authenticating.  Accordingly, the loan documents are

10  admissible and may be properly considered by the Court.

11          Second, Ray Gray argues that although the Note and Deeds of Trust were assigned to Plaintiff,

12  the Guaranty was not.  Ray Gray suggests that he in fact owes money under the Guaranty to the entity

13  named on the face of the original Guaranty, CMR II.  In California, it is presumed that the transfer of

14  a note will automatically result in the transfer of the note's guaranty.  *See Champion Home Builders*

15  *Co. v. Sipes*, 219 Cal. App. 3d 1415, 1424 (3d. Dist. 1990) ("The transfer of the debt from Champion

16  Credit to Champion included by operation of law the guaranty because the transfer of a thing transfers

17  the incidents.").  The Guaranty is related to the Note, as it guaranties the obligations owed by the

18  borrower under the Note.

19          Here, the Guaranty was transferred to Plaintiff along with the Note.  Specifically, the Guaranty,

20  along with the other Loan Documents, was assigned by CMR II first to ING USA, then to Lion II, and

21  finally to Plaintiff.  First, the allonge attached to the Note from CMR II to ING USA, dated September

22  25, 2006, provides that "[p]ursuant to that certain Assignment of Deeds of Trust and Other Loan

23  Documents of even date herewith . . . the Original Payee assigned to ING, and ING assumed, all of the

24  Original Payee's interest in (i) the Note, (ii) the three (3) Deeds of Trust securing the Note . . . and (iii)

25  *all other documents and instruments evidencing, securing or otherwise relating to the loan evidenced*

26  *by the Note*." (Cheek Decl., Exh. B, at 37 (emphasis added).)  Second, the allonge attached to the Note

27  from ING USA to Lion II, dated June 26, 2009, states that ING USA "hereby assigns, transfers,

28  conveys and endorses to the order of Lion II Custom Investments, LLC, . . . all of the undersigned's

1     right, title and interest in and to the Promissory Note . . . and *all claims related to the Promissory*

2     *Note*." (*Id.*, Exh. B, at 39 (emphasis added).) Third, the allonge attached to the Note from Lion II to

3     Plaintiff, dated July 2, 2010, provides that Lion II "hereby assigns, transfers, conveys and endorses to

4     the order of Rancho Mountain Properties, Inc. . . . all of the undersigned's right, title and interest in

5     and to the Promissory Note . . . and *all claims related to the Promissory Note*." (*Id.*, Exh. B, at 40

6     (emphasis added).)

7         Third, Ray Gray argues that Plaintiff has violated California's usury laws by seeking interest

8     ranging from 13.5% to 18.5%, which is above the usury limits in the California Constitution. The

9     California Constitution provides usury limits for various types of loans. CAL. CONST. art. XV, § 1.

10     However, the California Constitution exempts "any loans made or arranged by any person licensed as

11     a real estate broker by the State of California and secured in whole or in part by liens on real property."

12     *Id.* The California Finance Lenders Law provides that "[t]o accomplish its underlying purposes and

13     policies, this division creates a class of exempt persons pursuant to Section 1 of Article XV of the

14     California Constitution." CAL. FIN. CODE § 22002. As Ray Gray acknowledges in the Guaranty, CMR

15     II is a "CFL [California Finance Lender] Licensed Lender." (Cheek Decl., Exh. C, at 41.) There is

16     no evidence that the loan is not exempt from California's usury laws.

17         Fourth, Ray Gray argues that the Cheek Declaration "fails to establish any foundation for

18     personal knowledge of sums due, paid, or balances due, much less interest accrued under the

19     agreement." (Opp. at 18.) Mr. Dewey Cheek is the vice president of ING Investment Management,

20     LLC. (Cheek Decl. ¶ 1.) ING Investment Management is Plaintiff's agent and investment advisor

21     "with respect to loan and guaranty obligations owed to it by borrower Pfau, Pfau & Pfau, LLC ('Pfau')

22     and guarantors Ray Gray and Linda Gray." (*Id.*) Cheek reviewed the books and records "with respect

23     to the obligations referred to herein," *i.e.*, Loan Documents, including the Guaranty, and states that

24     "[o]riginal versions of these Records are within my custody and control." (*Id.* ¶ 2.) After reviewing

25     the records, Cheek calculated the unpaid principal, interest, default interest, and late fees owed by Pfau

26     to Plaintiff, which Ray Gray has guaranteed. (*Id.* ¶ 19.) In addition, Cheek lays out what appraisal and

27     foreclosure fees are owing. (*Id.* ¶ 21.) Accordingly, the Cheek Declaration properly sets forth the

28     amount owed by Ray Gray to Plaintiff.

11cv00358

1    Fifth, Ray Gray objects to the evidence of the foreclosure sales and credit bids. Evidence of

2  the credit bids is set forth in the three Trustee's Deeds Upon Sale. (Cheek Decl., Exh. D.) The

3  Trustee's Deeds Upon Sale are certified as true and correct documents recorded in San Diego, Fresno,

4  and San Benito Counties, and are executed by the trustee and notarized by a notary public. The Court

5  may properly take judicial notice of the Trustee's Deeds Upon Sale. *See Lee v. City of Los Angeles*,

6  250 F.3d 668, 689 (9th Cir. 2001) (court may take judicial notice of facts that are a matter of public

7  record); *McElroy v. Chase Manhattan Mortg. Corp.*, 134 Cal. App. 4th 388, 394 (4th Dist. 2005)

8  (court may take judicial notice of trustee's deed upon sale).

9    Accordingly, the Motion for Summary Judgement is **GRANTED**. Plaintiff is awarded a total

10  of $10,622,705.64.

11  **II.    MOTION TO STRIKE PLAINTIFF'S SUPPLEMENTAL DECLARATION AND FILINGS**

12    Ray Gray moves to strike Plaintiff's supplemental declaration and filings offered with its Reply

13  to the Motion for Summary Judgment. As the Court does not rely on the supplemental declaration and

14  filings offered with Plaintiff's Reply, the Motion to Strike is **DENIED AS MOOT**.[2]

15  **CONCLUSION**

16    For the reasons set forth above, Plaintiff's Motion for Summary Judgment Against Ray Gray

17  is **GRANTED** and Plaintiff is awarded $10,622,705.64 in monetary damages.

18    In addition, Ray Gray's Motion to Strike Plaintiff's Supplemental Declaration and Filings

19  Offered with Plaintiff's Reply is **DENIED AS MOOT**.

20  **IT IS SO ORDERED**.

21

22  DATED: April 9, 2012

23    HON. ROGER T. BENITEZ
      United States District Court Judge

24

25

26

27

28  _____

[2] Plaintiff's Request for Judicial Notice (Docket No. 41-3) is also **DENIED AS MOOT**.