
# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANCHO MOUNTAIN PROPERTIES, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>RAY GRAY and LINDA GRAY,<br><br>Defendants. | CASE NO. 11-CV-00358 BEN (BLM)<br><br>**ORDER DENYING MOTION FOR RELIEF FROM JUDGMENT**<br><br>[Docket No. 76] |

Presently before the Court is Defendants' Motion for Relief from Judgment. (Docket No. 76.) For the reasons stated below, the Motion is **DENIED**.

## BACKGROUND

This action arises from a guaranty executed by Defendants Ray Gray and Linda Gray (husband and wife) to secure the purchase of real property located in Paciences, California, by Pfau, Pfau & Pfau, LLC ("Pfau"). On August 28, 2006, Pfau entered into a loan with CMR Mortgage Fund II, LLC ("CMR II") for the purpose of acquiring land and developing residential lots. The loan was secured by liens on real property located in San Diego, Fresno, and San Benito Counties. CMR II loaned $19,500,000 in principal to Pfau. Defendants made, executed, and delivered a General Guaranty and Indemnity Agreement ("Guaranty") pursuant to which Defendants guaranteed "the punctual payment when due, whether at stated maturity, by acceleration or otherwise, of all of [Pfau's] indebtedness, obligations and liabilities to the Lender." (Pl. RJN,

Exh. C, at 29.)[1]

Pfau's and Defendants' obligations under the loan and related Guaranty were assigned by CMR II to ING USA Annuity and Life Insurance Company, which assigned the obligations to Lion II Customs Investments, LLC, which then assigned the obligations to Plaintiff Rancho Mountain Properties, Inc. ("Rancho"). Starting on July 1, 2008, Pfau failed to make timely interest payments, thereby constituting a default under the loan. On December 16, 2008, Pfau filed for bankruptcy.

On February 18, 2011, Rancho initiated this action to recover amounts due under the Guaranty, as a result of Pfau's default. Rancho claimed that $10,941,369.47 was still due from Pfau and, thus, Defendants, after foreclosing on certain secured property.

Default was entered against Linda Gray on June 27, 2011. (Docket No. 16.) Linda Gray filed a motion to set aside entry of default, which was denied on September 19, 2011. (Docket Nos. 17, 21.) Rancho filed a motion for default judgment against Linda Gray on November 22, 2011. (Docket No. 24.) On February 14, 2012, the Court granted the default judgment motion. (Docket No. 36.)

On November 22, 2011, Rancho moved for summary judgment against Ray Gray. (Docket No. 23.) In opposition, Ray Gray argued that Rancho was not the true holder of the guaranty debts owed by Defendants and that the exhibits proving Rancho's ownership—attached to Dewey Cheek's Declaration—had no evidentiary value. On April 9, 2012, the Court granted the motion for summary judgment. (Docket No. 45.) The Court found that the loan documents (including those that proved that the debts were assigned to Rancho) were operative and self-authenticated documents, and were admissible evidence. The Court also overruled Defendants' objections regarding Dewey Cheek's Declaration. In regards to the assignment of the guaranty debts, the Court held that they were presumptively assigned to Rancho along with the underlying Note.

---

[1] Plaintiff's Request for Judicial Notice (Docket No. 77-1) is **GRANTED**. *See* FED. R. EVID. 201.

Judgment was entered against both Linda Gray and Ray Gray on April 12, 2012. (Docket No. 47.) Defendants did not timely file an appeal of the Judgment. Nonetheless, the Court granted Defendants leave to appeal the Judgment. (Docket No. 55.) Defendants appealed the Judgment on July 23, 2012. (Docket No. 56.)

Presently before the Court is Defendants' Motion for Relief from Judgment.

## DISCUSSION

Under Federal Rule of Civil Procedure 60(b), a district court may relieve a party from a final judgment due to "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)," among other things. The moving party must show that the newly discovered evidence: "(1) existed at the time of the trial, (2) could not have been discovered through due diligence, and (3) was of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990) (internal quotation marks omitted). Moreover, the evidence must be admissible, credible, and material; not merely cumulative or impeaching. *United States v. McGaughey*, 977 F.2d 1067, 1075 (7th Cir. 1992). A decision to overturn a judgment under Rule 60(b) is considered "extraordinary relief." *Mitchell v. Shalala*, 48 F.3d 1039, 1041 (8th Cir. 1995).

Defendants seek to set aside the Judgment based on an IRS Form 1099-C filed by ING North America Insurance Corporation as to debtor Pfau, which Defendants claim is new evidence. According to Defendants, the 1099-C demonstrates that: (1) ING North America, not Rancho, was the holder of the debt owed by Defendants; and (2) Defendants' debt was cancelled as a result of the 1099-C.

First, the 1099-C does not prove that ING North America was the holder of the debt owed by Defendants. It is ING North America's standard practice for all commercial mortgage loan payments to be received into an account in the name of ING North America, regardless of how many subsidiary companies are involved in a single commercial mortgage. (Groote Decl. ¶ 2.) The funds are distributed to the appropriate

ownership entity based on their ownership interest in the loan. IRS forms 1098 and 1099 are therefore filed under ING North America's name. (*Id.*) Here, Rancho caused a 1099-C to be issued to Pfau, via ING North America. (*Id.* ¶¶ 3-4; Weiss Decl. ¶ 4.)

That Rancho's affiliated parent company filed tax forms on behalf of Rancho does not disprove that Rancho is owed any obligations by Defendants. The identity of a consolidated tax filer is not relevant to ownership. *See In re Bob Richards Chrysler-Plymouth Corp.*, 473 F.2d 262, 264-65 (9th Cir. 1973) (holding that, in the context of tax returns, the identity of the filer is not proof of ownership and that "[a]llowing the parent to keep any refunds arising solely from a subsidiary's losses simply because the parent and subsidiary chose a procedural device to facilitate their income tax reporting unjustly enriches the parent"). Having one company act as the reporting company of another is an ordinary practice as established by IRS form 2678—Employer Appointment of Agent. (Weiss Decl. ¶ 4.)

Second, the 1099-C has no bearing on the separate debt owed by Defendants pursuant to the Guaranty. IRS regulations required that a 1099-C be filed after Rancho foreclosed on the properties. *See* 26 C.F.R. 1.6050P-1(b)(2)(D) (requiring a 1099-C to be filed after a non-judicial foreclosure). It has no bearing on Defendants' separate guaranty debts.

In the Guaranty, Defendants expressly waived all defenses related to cancellation of debt as to Pfau:

> 3. <u>Rights of the Lender</u>. Guarantor authorizes the Lender to perform any of the following acts at any time in its sole discretion, all *without notice to Guarantor* and *without affecting Guarantor's obligations* under this Guaranty:
> . . .
> (e) The *Lender may release Borrower of its liability for the Loan* or any part of it.
> . . .
> 4. <u>Guaranty to be Absolute</u>. Guarantor expressly agrees that until the Obligations are paid and performed in full and each and every term, covenant and condition of this Guaranty is fully performed, *Guarantor shall not be released* by or because of:
> (a) Any act of event that *might otherwise discharge, reduce, limit or modify* Guarantor's obligations under this Guaranty;
> . . .

(e) *Any lack of validity or enforceability of the Note*, the Deed of Trust or any other Loan Document or any other agreement or instrument relating thereto;
(f) Any action of the Lender described in Paragraph 3 above[.]
. . .
Guarantor hereby acknowledges that absent this Paragraph 4, Guarantor might have a defense to the enforcement of this Guaranty as a result of one or more of the foregoing acts, omissions, agreements, waivers or matters. Guarantor hereby expressly waives and surrenders any defense to any liability under this Guaranty based upon any of such acts, omissions, agreements, waivers or matters. It is the express intent of Guarantor that Guarantor's obligations under this Guaranty are and shall be absolute, unconditional and irrevocable.
5. Guarantor's Waivers. Guarantor waives:
. . .
(c) Any defense based on any claim that Guarantor's obligations exceed or are more burdensome than those of Borrower;
(d) Any defense based on: . . . any release, discharge, modification, impairment or limitation of the liability of Borrower to the Lender from any cause . . .
(h) Any defense based on or arising out of any action of the Lender described in Paragraphs 3 or 4 above.

(Pl. RJN, Exh. C, at 29-31 (emphasis added).)

Accordingly, Defendants have not established the required elements for relief from judgment under Rule 60(b)(2), based on "newly discovered evidence."[2] As this issue is dispositive, the parties' remaining arguments will not be addressed.

## CONCLUSION

For the reasons stated above, the Motion for Relief from Judgment is **DENIED**.

**IT IS SO ORDERED**.

DATED: August 10, 2013

HON. ROGER T. BENITEZ
United States District Judge

---

[2] Defendants also argue that Dewey Cheek's Declaration submitted in support of the previously filed motion for summary judgment is without foundation and is false. Many of these objections have already been overruled by the Court when it disposed of the motion for summary judgment. Defendants have already appealed the Court's Judgment, which is their only available remedy in regards to this issue.

- 5 -

11cv00358